United States District Court
Southern District of Texas
**ENTERED**
April 01, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LEGACY FUNERAL GROUP, LLC, | § § § | |
| Plaintiff, | § | |
| VS. | § § | CIVIL ACTION NO. 4:19-CV-4686 |
| ANTHONY JOSEPH DAMIANO; aka DAMIANO, *et al*, | § § § § | |
| Defendants. | § | |

## ORDER

Pending before the Court is a Renewed Motion to Dismiss filed by Defendant Legacy Funeral Services, LLC ("Colorado Legacy") (Doc. No. 41). Plaintiff Legacy Funeral Group, LLC ("Plaintiff") responded (Doc. No. 42), Colorado Legacy replied, (Doc. No. 48), and Plaintiff filed a sur-reply (Doc. No. 49). Having carefully reviewed the briefing and the law, the Court hereby **DENIES** the Motion to Dismiss.

### I. Background

This is a trademark infringement case involving the alleged marks of Plaintiff, a funeral home service, and Colorado Legacy, which is apparently a middleman service company between consumers and funeral homes. According to the First Amended Complaint ("FAC"), Plaintiff owns and operates funeral homes in Texas and nine other states and maintains a principal place of business at 3103 Sackett St. Houston, Texas 77098. It also offers other mortuary services like cremations and burials. Plaintiff has advertised and marketed itself with its "Legacy marks," which include words and designs. (Doc. No. 38 at 6). Plaintiff registered its tree logo, as well as "Legacy Funeral Group," with the Texas Secretary of State in 2009. It also registered various trademarks with the United States Patent & Trademark Office in 2014 and 2015.

1

As pleaded in the FAC, Funeral Services Provider, LLC began marketing and advertising itself as a provider of funeral services and cremations to Texans—and to citizens of other states where Plaintiff was doing business—through its websites <legacycremationservices.com> and <funeralservicesprovider.com>. The Plaintiff alleges those websites were using names and marks similar to Plaintiff's. Plaintiff's attorney contacted A.J. Damiano, the alleged owner of Funeral Services Provider, LLC, who agreed to change its logo and stop using names and marks similar to those of Plaintiff in 2013. In 2019, however, Plaintiff's president Michael Soper allegedly began receiving invoices from other funeral homes for services that Plaintiff did not perform. Soper also allegedly received emails and phone calls from industry colleagues who relayed various complaints from customers and other funeral homes about a "Legacy Funeral Services" in Houston that was acting as an internet middleman for online cremations. At this point, Soper learned that A.J. Damiano was now operating Colorado Legacy, which apparently does not perform any services or own any funeral homes itself. Plaintiff alleges that Colorado Legacy had "taken control" over the website <legacycremationsservices.com> and was using the name "Legacy Funeral Services" with a tree logo similar to Plaintiff's to market its services. According to the FAC, Soper called the number on Colorado Legacy's website, and the person who answered the phone stated that "Colorado Legacy was headquartered in Houston." (*Id.* at 9).

Plaintiff alleges that Colorado Legacy not only held itself out as Houston-based over the phone, but also published and directed "interactive website marketing" to every incorporated city in Texas. (*Id.*). These individual webpages allegedly misrepresent that Colorado Legacy had been providing services in those Texas cities for decades. The allegedly infringing logo appears on every webpage. Plaintiff alleges that Colorado Legacy is "attempting to pass itself off as [Plaintiff]" because Colorado Legacy "has an F rating with the BBB" and has even been forced to stop

2

operating in certain states. (*Id.* at 10). Colorado Legacy's alleged infringement and representations have, according to Plaintiff, caused much confusion among its current and potential customers, and been damaging to Plaintiff's reputation.

In 2019, Plaintiff contacted Colorado Legacy by letter to request that it cease and desist from further infringement upon the "Legacy Marks" in connection with their services. (*Id.* at 11). Thereafter, Plaintiff sued A.J. Damiano and Colorado Legacy for (1) Infringement of Federally Registered Trademarks; (2) Infringement of Common Law Trademarks and Trade Name; (3) Unfair Competition and False Designation of Origin under 15 U.S.C. §1125(a); (4) Violation of the Texas Anti-Dilution Statute; (5) State Unfair Competition Pursuant to Texas Bus. & Comm. Code § 16.29; and (6) Common Law Unfair Competition. In ruling on the defendants' first Motion to Dismiss (Doc. No. 20), the Court dismissed claims against A.J. Damiano but denied the motion without prejudice to Plaintiff's right to renew its arguments as to personal jurisdiction following jurisdictional discovery. (Doc. No. 28). Plaintiff filed its FAC (Doc. No. 38), and Colorado Legacy filed this Motion to Dismiss based on lack of personal jurisdiction as well as failure to state a claim (Doc. No. 41). Plaintiff responded (Doc. No. 42), Colorado Legacy replied (Doc. No. 48), and Plaintiff sur-replied (Doc. No. 49).

## II. Legal Standard

Defendant has filed a motion to dismiss for lack of personal jurisdiction.[1] When a district court rules on a Rule 12(b)(2) motion without a hearing, the plaintiff must make a *prima facie*

---

[1] Defendant has also filed a motion to dismiss for failure to state a claim. Colorado Legacy's sole—and sparse—argument is that there is no likelihood of confusion because it has "never engaged in succession planning services for funeral homes," and "is not even in the same marketplace." (Doc. No. 41 at 12–13). The Court finds this argument to be wholly lacking. As Plaintiff asserts, "the underlying services are the same: funeral and cremation services to residents of Texas and other states." (Doc. No. 42 at 10). Plaintiffs have alleged that there has *already been* confusion caused by the alleged infringement (Doc. No. 38 at 8–11) and that the basis of the claim is that Colorado Legacy's "infringement and unfair competition in *funeral and cremation services* are harming Plaintiff." *Id.* (emphasis added). There can be no good faith argument that Colorado Legacy is not in the business of funeral and cremation services or that Plaintiff has not plausibly stated a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

3

showing of jurisdiction. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). The court may consider the contents of the record, including affidavits or other recognized methods of discovery, in deciding whether to exercise personal jurisdiction. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). Generally, the court accepts the plaintiff's non-conclusory, uncontroverted allegations as true, and resolves conflicts between the facts contained in the parties' affidavits in the plaintiff's favor. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001).

A federal court may exercise personal jurisdiction over a non-resident defendant if: (1) the long-arm statute of the forum state allows the exercise of personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction over that defendant is consistent with Fourteenth Amendment to the United States Constitution. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009). The two-part jurisdictional inquiry collapses into a single step in this forum because the Texas long-arm statute extends to the limits of federal due process. TEX. CIV. PRAC. & REM. CODE § 17.042; *Johnston*, 523 F.3d at 609; *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990). To meet the requirements of due process, the plaintiff must demonstrate: (1) that the non-resident purposely availed himself of the benefits of the forum state by establishing minimum contacts with the state; and (2) that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *Mullins*, 564 F.3d at 398.

"Minimum contacts" can give rise to either specific personal jurisdiction or general personal jurisdiction. *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). "[A] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to

4

render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Plaintiff claims only specific personal jurisdiction.

The court "may exercise 'specific' jurisdiction in a suit arising out of or related to the defendant's contacts with the forum." *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). The Fifth Circuit has articulated a three-step analysis for specific jurisdiction: "(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). The touchstone of the minimum contacts inquiry is whether the defendant's conduct shows that it "reasonably anticipates being haled into court." *Id.*

### III.  Analysis

To demonstrate the Court's specific jurisdiction over Colorado Legacy, Plaintiff alleges that Colorado Legacy "has deliberately directed their activities to Texas in the form of conducting business with entities located within the Southern District of Texas using Legacy's marks." (Doc. No. 38 at 2). Specifically, Plaintiff alleges that Colorado Legacy (1) "has created and maintains over 1,700 interactive city-specific web pages marketing to Texas citizens seeking funerals or cremation"; (2) "holds itself as doing business in literally every incorporated city on Texas" on its website; (3) maintains web pages that are "interactive, allowing the person seeking a funeral home in that city to submit information directly, via the website"; and (4) has, through its agents over the phone, represented that it is Houston-based or headquartered in Houston. (*Id.* at 2–9).

Colorado Legacy focuses on three major points to contest specific jurisdiction. First, it argues that its website cannot establish minimum contacts because it is a "passive" website under Fifth Circuit precedent. (Doc. No. 41 at 9). In support of the website's "passive" nature, Colorado Legacy highlights that it does not solicit customers from Texas: its site posts a 1-800 number for potential customers to call and offers forms for potential customers to fill out to get a free quote, neither of which has any indication of Texas. Second, Colorado Legacy argues that the "stream of commerce doctrine" applies only to goods, not personal services like those that Colorado Legacy offers.[2] Third, Colorado Legacy challenges the credibility of declarations upon which Plaintiff relies for the notion that Colorado Legacy holds itself out as doing business in Houston.

In its prior ruling, this Court stated that if Colorado Legacy "is offering funeral services in Houston that purportedly infringe on Plaintiff's trademark, then there is unquestionably personal jurisdiction over the Legacy Defendant in Texas." (Doc. No. 28 at 5). Notably, as Plaintiffs allege, "Colorado Legacy operates no mortuary, funeral home or crematory anywhere pursues [sic] being a middleman between consumers and funeral homes." (Doc. No. 38 at 2). The Court, resolving all factual disputes in the plaintiff's favor, *Panda*, 253 F.3d at 868, finds that Plaintiff has made a *prima facie* case that the defendant has minimum contacts with Texas. The combination of Plaintiff's allegations and evidence that Colorado Legacy has held itself out as conducting business in Houston, and the content of Colorado Legacy's website establish that Colorado Legacy is

---

[2] Colorado Legacy cites one Fourth Circuit case in support of this proposition but misstates the holding of the case. In *ALS Scan v. Digital Serv.*, the Court merely adopted the *Zippo* model for determining when electronic contact with a State is sufficient to establish jurisdiction and held: "a State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002) (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D. PA. 1997).

"offering funeral services in Houston that purportedly infringe on Plaintiff's trademark." (Doc. No. 28 at 5).

Plaintiff has submitted sworn declarations from individuals—including Plaintiff's president, Michael Soper—that various agents of Colorado Legacy have indicated over the phone that Colorado Legacy was either located or headquartered in Houston. The fact that Colorado Legacy has contradictory affidavits does not defeat this showing: The Court resolves conflicts between the facts contained in the parties' affidavits in the plaintiff's favor. *Panda*, 253 F.3d at 868. Plaintiff has also argued that Colorado Legacy had a lease in Houston. (Doc. No. 42-3). Plaintiff introduced records from Regus Management Group that indicate that an entity owned by A.J. Damiano with Colorado Legacy's phone number, Colorado Legacy's email address (info@legacyfuneral), and Colorado Legacy's business address, was leasing office space in Houston despite going under the name "Funeral and Cremations Holding Group of NA." *Id.* The Fifth Circuit has clearly stated that foreseeability is an adequate basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce, warning that a defendant "must not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the 'unilateral activity of another party or third person.'" *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). By representing over the phone that it conducts business out of Houston, and by renting space in Houston, Colorado Legacy cannot be said to have been haled into court in Texas "as result of random, fortuitous, or attenuated contact."

Indeed, Colorado Legacy has tailored webpages to attract customers in every incorporated city in Texas. Each page proclaims (using Bellaire as an example): "Bellaire, TX Funeral Homes: Serving Bellaire, TX Families With Their Funeral Needs For Over Two Decades" (Doc. No. 38 at 3). At the very least, Colorado Legacy *advertises* itself to consumers to suggest it sells goods, like

7

caskets, at funeral homes. Certainly, there can be no argument that Colorado Legacy could not reasonably expect to be haled into Court in Texas, or that it did not purposefully avail itself to the laws of Texas: it professes on its own site that it has been "serving" cities in Texas for decades.[3]

In spite of its actions, Colorado Legacy contends that under the *Zippo* test, espoused by the Fifth Circuit in *Mink v. AAAA Development, LLC*, 190 F.3d 333, 336 (5th Cir. 1999), its website presence fails to establish minimum contacts with Texas. In *Mink*, the Court addressed how personal jurisdiction can be constitutionally exercised over a defendant based on the "nature and quality of commercial activity that an entity conducts over the Internet." *Id.* at 336. The *Mink* court considered Internet use to justify a court's exercise of specific jurisdiction on a spectrum: at one end, there is personal jurisdiction when a defendant does business over the internet as illustrated by clear and repeated transmission of computer files over the internet; at the other end, there is no personal jurisdiction when a website is merely a passive hosting site. *Id.* For websites that fall in the middle, a court must perform an analysis of the interactivity and commercial nature of the exchange information is required for websites that fall in the middle. *Id.*

Colorado Legacy argues that its own website, like the one in *Mink*, merely offers contact information and does not host any actual business transactions. While it is true that Plaintiff has not demonstrated that customers can place orders over the website, which courts have found to be an indicator of purposeful availment, *see e.g., Mink*, 190 F.3d at 337; *McFadin*, 586 F.3d at 762, it *has* shown that the webpages specifically advertise to myriad cities in Texas, a factor wholly

---

[3] Moreover, Colorado Legacy avails itself of the benefits of Texas Law. The agreement between Colorado Legacy and its Texas customers states:

> This agreement shall be governed by the local law of the state in which the funeral services is being performed and you agree that the jurisdiction of any suit involving this will lie in the courts in that jurisdiction.

(Doc. No. 41-2 at 9).

8

absent in *Mink*. This factor supports the exercise of personal jurisdiction, because courts are focused on whether the defendant intended to obtain business from a particular state such that the defendant is not haled in because of attenuated contacts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *see also Tempur-Pedic Intern., Inc. v. Go Satellite Inc.*, 758 F.Supp. 2d 366, 376 (N.D. Tex. 2010) ("Unlike . . . where defendants' products had passed completely to consumer's control, [Defendant] is not a victim of a unilateral third-party conduct. [Defendant] cannot open itself for business to every state in the United States and then feign surprise when it receives an order from a resident of one of the states."). Plaintiff has also alleged that the various webpages, tailored to cities in Texas, "are interactive, allowing the person seeking a funeral home in that city to submit information directly, via the website." (Doc. No. 38 at 4).

Moreover, Colorado Legacy is operating under the assumption that the website alone must establish minimum contacts. That is simply not the case here. Plaintiff has adequately established that Colorado Legacy held itself out over the phone as conducting business in Houston and it or a connected entity has leased office space in Houston. The website's plethora of webpages, one for every city in Texas, its ability to receive customer information, and Colorado Legacy's various representations that it is based in Houston, are sufficient to establish minimum contacts.

Having established that Colorado Legacy has minimum contacts with Texas, the Court also finds that Plaintiff's cause of action arises out of Colorado Legacy's forum-related contacts. *McFadin*, 587 F.3d at 759. Colorado Legacy's representations that it is Houston-based or Houston-headquartered, as well as its tailored websites to Texas cities give rise to, and in fact are the sole reasons for, the confusion surrounding Plaintiff's name and trademark. (Doc. No. 38 at 10–13). The Court also easily finds that its exercise of personal jurisdiction is fair and reasonable and that it does not offend traditional notions of fair play and substantial justice for this Court to exercise

personal jurisdiction over Colorado Legacy. *McFadin*, 587 F.3d at 759; *Mullins*, 564 F.3d at 398. As discussed in its discussion on minimum contacts, the Court finds that it is fair for Colorado Legacy to be haled into Court in Texas, considering its efforts to market itself as Houston-based, its holding out as serving Texas communities for decades, and the fact that the alleged infringement and related violations all give rise to Plaintiff's injury in Texas.

## IV. Conclusion

For the foregoing, the Court **DENIES** Colorado Legacy's Renewed Motion to Dismiss (Doc. No. 41).

Signed at Houston, Texas, this 1st day of April, 2021.

Andrew S. Hanen
United States District Judge